# No. 27608

## The People of the State of Colorado v. Lawrence Thomas Jackson

(570 P.2d 527)

Decided September 26, 1977.　　　　　Rehearing denied November 7, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Deborah L. Bianco, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was convicted of first-degree assault against a peace officer and resisting arrest. As constitutional questions were raised, we accepted jurisdiction of this appeal from the Colorado Court of Appeals. We affirm the district court.

At about midnight two Pueblo police officers came upon the defendant and his brother as they were pounding on the locked door of a tavern. The defendant admitted that he had a knife, but testified that he dropped it to the ground when asked to do so. The officers testified that the defendant lunged at them several times with the knife, and that he dropped it only as a result of a blow by one of the officers, who struck him with a flashlight.

The assault charge was laid under section 18-3-202(1)(e) which provides:

"(1) A person commits the crime of assault in the first degree if:
* * * *
"(e) With intent to cause serious bodily injury upon the person of a peace officer or fireman, he threatens with a deadly weapon a peace officer or fireman engaged in the performance of his duties, and the offender knows or reasonably should know that the victim is a peace officer or fireman acting in the performance of his duties."

## I.

The defendant contends that the statute is unconstitutionally vague. He predicates his argument upon two statements:

"[I]t is impossible to discern intent to cause serious bodily injury from intent to cause bodily injury. . . .

". . .How can we measure the difference between intent to cause serious bodily injury and intent to cause bodily injury when no injury is inflicted?"

In accordance with the definition in section 18-1-901(3)(p), C.R.S. 1973, the court instructed the jury:

"'Serious Bodily Injury' means bodily injury which involves a substantial risk of death, serious permanent disfigurement or protracted loss or impairment of the function of any part or organ of the body."

We see nothing vague in the definition of "serious bodily injury." We believe it obvious to a juror that "serious bodily injury" has as a threshold requirement a greater degree of intended injury than "bodily injury." *See People v. Martinez,* 189 Colo. 408, 540 P.2d 1091 (1975).

We do not subscribe to the position that a jury cannot determine the defendant's intent without the benefit of evidence of actual injury. The existence of specific intent, like that of any other element, is a question of fact for the jury. *People v. Archer,* 173 Colo. 299, 477 P.2d 791 (1970). Intent need not be proved by direct substantive evidence, but may be discerned from the circumstances surrounding the offense. *People v. Edwards,* 184 Colo. 440, 520 P.2d 1041 (1974); and *Baker v. People,* 176 Colo. 99, 489 P.2d 196 (1971).

## II.

The defendant's second contention is that the first-degree assault statute violates his constitutional guarantee of equal protection in that, as was the case in *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975), there is no sufficiently pragmatic difference between it and the second-degree assault statute, section 18-3-203, C.R.S. 1973. The latter statute reads:

"(1) A person commits the crime of assault in the second degree if:
"(a) With intent to cause serious bodily injury to another person, he does cause such injury to any person; or

"(b) With intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon; or

"(c) With intent to prevent one whom he knows, or should know, to be a peace officer or fireman from performing a lawful duty, he intentionally *causes bodily injury* to any person; or

"(d) He recklessly causes serious bodily injury to another person by means of a deadly weapon; or

"(e) For a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm; or

"(f) While lawfully confined, he *violently applies physical force* against the person of a peace officer or fireman engaged in the performance of his duties, and the person committing the offense knows or reasonably should know that the victim is a peace officer or fireman engaged in the performance of his duties."[1] (emphasis added)

There are fundamental distinctions between the two statutes. In subsection (a), (b) and (d) the victim is "another person," whereas the applicable portion of the first-degree assault statute involves "a peace officer or fireman." Under subsection (c) and (f) of the second-degree assault statute the defendant must either intentionally cause bodily injury or violently apply physical force, whereas there is no such requirement under the portion of the first-degree assault statute here involved. There is no merit in the defendant's argument that subsections (c) and (f) are more serious acts and, therefore, there is a violation of equal protection. Subsection (e) is obviously completely different.

### III.

■ The defendant would have us rule that the evidence was insufficient to establish specific intent to inflict serious bodily injury. His argument in support of this proposition is that we should find the evidence to the contrary more convincing. There is evidence that the defendant had the knife in his hand and was attempting to get around his brother in order to reach one of the police officers; that the defendant was trying to stab the officer; that the defendant was ordered by the officers to drop the knife, but did not do so; and that one of the officers struck the defendant's arm with the flashlight, causing him to drop the knife. This testimony was sufficient to support the jury's finding of specific intent. *People v. Focht*, 180 Colo. 259, 504 P.2d 1096 (1972).

---

[1]Subsection (f) was amended in 1976, nearly two years subsequent to the trial of the case. Section 18-3-203, C.R.S. 1973 (1976 Supp.).

## IV.

■ The defendant argues that the action should be dismissed as a result of unavailability of the videotape of the booking procedure. The defendant was charged and arrested on November 1, 1974. The preliminary hearing was held on April 21, 1975. In September, 1975 the defendant moved for the production of the videotape, which motion was later denied. The trial commenced on October 28, 1975.

At the trial an officer testified that, at the time of the arrest of the defendant, the booking procedure at the police station was recorded on videotape. On the day following this testimony, after the People had rested their case, defense counsel asked the deputy district attorney to disclose whether the tape was still in existence and, if so, to produce it. The deputy said that the tapes were normally kept for only 30 days, "but I will check." Just before the court took its noon recess, the judge suggested to the deputy that during the noon hour he investigate the matter of the videotape.

There was no further mention of the videotape during the trial. There is no indication in the record whether or not the prosecution produced the tape. The defendant did not preserve the issue by any objection at trial nor in his motion for new trial. He has failed to show that he was prejudiced by the prosecution's failure (if there was a failure) to produce the tape. Under the circumstances, the defendant's argument fails. *Casias v. People*, 160 Colo. 152, 415 P.2d 344 (1966), *cert. denied*, 385 U.S. 979, 87 S.Ct. 523, 17 L. Ed.2d 441 (1966).

## V.

■ The last assignment of error is that the court erred in failing to instruct the jury as to the offense of disorderly conduct under defendant's theory of the case. The defendant tendered an instruction which defined disorderly conduct and then stated:
"If, after considering all of the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant Lawrence Thomas Jackson, without affirmative defense, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the information, you should find the defendant guilty of disorderly conduct with a deadly weapon; if you do not so find, you should find the defendant not guilty of disorderly conduct with a deadly weapon."
The court declined to give the instruction.

The court was correct in its ruling as self-defense, not disorderly conduct, was the defendant's theory of the case. The jury was instructed as to self-defense. There was no basis for submission of the question as to whether defendant was guilty of disorderly conduct. *People v. Brake*, 191 Colo. 390, 553 P.2d 763 (1976); *People v. Plotner*, 188 Colo. 297, 534 P.2d 791 (1975); section 18-1-408(6), C.R.S. 1973.

Judgment affirmed.