The PEOPLE of the State of Colorado, Petitioner,

v.

Jack Eugene FLEMING, Respondent.

No. 90SC627.

Supreme Court of Colorado, En Banc.

Sept. 23, 1991.

Rehearing Denied Oct. 21, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Russel, First Asst. Atty. Gen., Denver, for petitioner.

Jack Eugene Fleming, pro se.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *People v. Fleming*, 804 P.2d 231 (Colo.App.1990), which reversed the theft conviction of Jack Eugene Fleming. We reverse and remand to the court of appeals with directions to reinstate the judgment of conviction that was entered after a jury found defendant Fleming guilty of theft of more than $10,000. The court of appeals affirmed the defendant's conviction of extortion and no issue is before us on the validity of the defendant's extortion conviction.

In September 1984, Jack Fleming, Joe Grice, and Merrill Harper agreed to form the Western States Mining Corporation (Western States) to mine certain properties in Arizona for gold and other precious metals. Harper provided investment capital of $42,500. Grice invested an additional $5,000 for each of his two children. Grice acted as vice president of the company, took control of the funds, and deposited the funds into a bank account. In October 1984, Fleming asked Grice to turn over the money so he could establish a corporate bank account for Western States. Grice complied and gave Fleming $43,749. Fleming did not open a corporate account, but deposited the funds into the credit union account of his wife, Carolyn Fleming. Subsequently, because of the low percentage of precious metals in the core samples taken from the mine site, commercial mining was deemed unfeasible. When Harper learned the results of the core assays, he demanded that Fleming give him back his money. After Fleming refused on several occasions to refund Harper's investment, Harper presented his case to the district attorney.

Theft charges were filed against Fleming as a result of the district attorney's investigation. The extortion charge was filed because of Fleming's subsequent threats to have Harper "taken out by a hit man." In October and November of 1986, the district attorney issued a subpoena *duces tecum* pursuant to the Colorado Consumer Protection Act, currently codified in the same form at section 6–1–108, 2 C.R.S. (1990 Supp.), and obtained Carolyn Fleming's records at the credit union. The records revealed that the Flemings had withdrawn funds to pay for rent, clothes, groceries, an automobile, and their son's college tuition. In January 1988, following the filing of criminal charges, a second subpoena *duces tecum*[1] was issued for Fleming's brokerage account at Smith Barney Harris Upham & Company (Smith Barney) in New York City. The subpoena was served upon Smith Barney in New York and the records were produced at Fleming's preliminary hearing. The Smith Barney records established that funds taken from Carolyn Fleming's credit union account had been used by Fleming to speculate on various stocks, producing a profit of $13,967. The records were admitted into evidence.

---

1. The court of appeals characterized this subpoena as administrative since the trial court had found that the subpoena was issued pursuant to the Colorado Consumer Protection Act. In *Charnes v. DiGiacomo*, 200 Colo. 94, 101, 612 P.2d 1117, 1122 (1980), we held that, under the Colorado Constitution, a bank depositor has a reasonable expectation of privacy in his bank records. In *DiGiacomo*, the terms "judicial subpoena" and "administrative subpoena" were interchangeable.

In this case, we need not determine whether records from a brokerage firm are to be accorded the same protection as bank records. *See Pignatiello v. District Court*, 659 P.2d 683, 684–85 (Colo.1983) (grand jury subpoenas *duces tecum* issued to eleven banks and one brokerage company).

At trial, Fleming admitted that he had purchased a car with funds from his wife's credit union account and had transferred funds from that account to his brokerage account at Smith Barney. He also admitted to keeping the profit from his Smith Barney investment. Fleming's theory of defense was that he had not spent the funds belonging to Harper or Western States, but had, after deducting the cost of his bail bond and his lawyer, deposited the cash in a safe in his garage. The jury convicted the defendant on both the theft and the extortion counts. The court of appeals affirmed the extortion conviction, and it reversed the theft conviction and remanded for a new trial.

The sole issue on certiorari is whether the use of a subpoena *duces tecum* to obtain the Smith Barney records constituted reversible error. In our view, the error, if there was error, was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The records were evidence that Fleming had transferred funds from his wife's credit union account to his account at Smith Barney. Fleming's testimony, his admissions, and his declared theory of defense made the admission of his brokerage account records harmless error.

The jury rejected Fleming's defense that the funds were in his safe and returned a verdict of guilty on both counts. The elements of value and intent necessary to prove the theft charge were established by evidence other than the Smith Barney records. *See People v. Alexis*, 806 P.2d 929, 932 (Colo.1991) (evidence obtained in violation of the fourth amendment was harmless beyond a reasonable doubt because it was cumulative to the defendant's own testimony).

Accordingly, we reverse the court of appeals and remand with directions to reinstate the judgment of conviction for theft against the defendant, Jack Eugene Fleming.